### In re AMERICAN KNIT GOODS MFG. CO.

(District Court, E. D. New York. August 16, 1907.)

1. BANKRUPTCY—RECLAMATION OF PROPERTY BY SELLER—RESCISSION OF SALE CONTRACT.

Circumstances under which a court of equity might permit a rescission of a contract of sale on the ground of mistake in the representations, where the parties could be restored to their original position, may not warrant such relief after the purchaser has become bankrupt, and especially where the specific property purchased cannot be restored.

2. SAME—SALE INDUCED BY FRAUD.

Evidence held not to sustain the claim of a seller of goods to a bankrupt that such sales were induced by fraud on the part of the bankrupt in knowingly making materially false statements of assets, such as would entitle the seller to rescind.

In Bankruptcy. On exceptions to report of special master.

James, Schell & Elkus, for trustee.

Hyman, Campbell & Eaton, for petitioners.

CHATFIELD, District Judge. A special master in reclamation proceedings has reported that the goods sought to be reclaimed should be retained by the trustee, and the petitioning creditors left to prove their claim as general creditors for the balance due them, amounting to $15,280.21. To this report the attorneys for the trustee have excepted, upon one ground, but have also moved to have the report confirmed; and the petitioning creditors have excepted separately to various findings by the special master, and to his conclusion.

The principal ground of objection by the petitioning creditors is that a statement of assets made by the bankrupt a few months prior to its failure is claimed to have been an inducement for further deliveries of goods by these creditors, and that this statement was not only false in fact, but that the bankrupt's officers knew it to be such, and issued it with a fraudulent purpose, in order to conceal the true condition of the corporation. Much of the goods delivered upon the orders made subsequent to the giving of the statement referred to have been paid for, and the balance amounts to the sum above mentioned, viz., $15,-280.21. Subsequent to the making of this statement two separate contracts were entered into, one upon April 11, and one upon May 3, 1905, and a former contract of November 19, 1904, was modified, and the special master has found that this modification was not a new giving of credit, but merely a reduction in amount of the original contract.

However this may be, it appears from the testimony that the bankrupt corporation was in default, and that the creditors did not enforce this default, but allowed the modification of the contract, relying up-

on the statement of condition dated March 17, 1905. It is necessary therefore, to consider (1) whether this statement was false and fraudulent to a material extent; (2) whether the bankrupt, through its officers, knew that it was so false and misleading, and purposely intended to deceive by the use of the statement; and (3) whether the claimant creditors relied upon this statement for facts so material that the transaction would be set aside by a court of equity (if these statements were not in fact true) as having been entered into upon a mistake of fact, and causing the unjust enrichment of the party responsible for the mistake.

As to the first and second points, the special master has reported at length as to the truth and accuracy of the statement. He has found that the statement issued was not materially false, and that the bankrupt corporation and its officers did not intend to issue a false statement, or to deceive. The special master has also reported that the creditors relied in part upon this statement and in part upon personal examinations for their action subsequent to the date of the statement of March 17, 1905, and the evidence seems to bear out the special master's report. Some of the items included as quick assets are capable of argument as to whether they are assets or liabilities; but there is no sufficient proof that the officers of the corporation purposely and fraudulently inserted these amounts with the intention of making a false statement, and it does not seem that these items are of such a character that they can be called mistakes of fact, or misrepresentations of fact, especially if made without intentional fault upon the part of the person making the representations.

The creditors have claimed a right to rescind upon two theories: (1) That there was actual fraud; and (2) that, in the absence of actual fraud, equity would grant a rescission, if the representations were false in fact and the person making them mistakenly supposed them to be true.

It is unnecessary to go into the law of the latter proposition. The circumstances under which equity will allow the rescission of a contract, and attempt to restore the parties to their original position, when such can equitably be done, do not seem to be applicable to the present case, when other creditors' rights have intervened, and the debtor has been thrown into bankruptcy. It is believed that no court of equity would, under the present circumstances, allow the rescission. At any rate, no such rescission would be allowed, except with relation to some specific object or subject-matter of a contract, which could be returned to the party from whom it was obtained, and the parties thus be restored to their original position. In the present case this is not possible, and the petitioners have not prayed for the return of specific objects alone, but, on the contrary, have asked that they be given the balance in their favor upon an accounting; and, even if the return of the yarns in the possession of the trustee were what was asked, it does not seem to this court that the statement of March 17, 1905, contains such mistakes of fact as to show that the creditors did not assume the risk of the contract made, or were deceived as to material facts into making that contract.

The special master's findings as to the accuracy of the financial statement in its material features, and the freedom of the officers of the bankrupt from fraudulent and intentional deceit, seem to be supported by evidence, and the burden of showing them incorrect to such a degree as to justify setting aside the report has not been sustained.

It is unnecessary to consider the exception on behalf of the trustee to the special master's report, as the report is in his favor.

The exceptions of the creditors should be overruled, and the report confirmed.